IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00616-PAB-KMT

PAUL VANPORTFLIET,
CARPET DIRECT TRUST,
VP PROPERTY & DEVELOPMENT, LLC,
MIKE HICKMAN,
HICKMAN CORPORATION,
ALLAN DAVISSON,
GOLDSTAR GROUP, INC.,
DAVISSON ENTERPRISES, LLC,
MICHAEL SHAUVER,
RICHARD SHAUVER COMPANY, LLC,
ROBERT HANSON, and
WALKING R ENTERPRISES,

      Plaintiffs,

v.

CARPET DIRECT CORPORATION, a Colorado Corporation,
GAYLE CROUCH,
GREG JENSEN,
JAMES RAUSCH,
CHARLES OWENS JR., and
RONALD L. GOODRICH, C.P.A.,

      Defendants.

---

## ORDER

---

      This matter is before the Court on CDC Defendants' Motion for Judgment on the

Pleadings [Docket No. 39] and Defendant Ronald L. Goodrich, C.P.A.'s Motion for

Judgment on the Pleadings [Docket No. 45].

## I. BACKGROUND[1]

This case arises from an employment dispute between plaintiffs and defendant Carpet Direct Corporation ("CDC").  CDC was founded in 1993 by Earl Crouch[2] to sell a variety of floor coverings, including carpet, to end-user consumers.  Docket No. 10 at 10, ¶ 35.  CDC sells its products through brokers who operate under the name Carpet Direct.  *Id.*, ¶¶ 36-37.

Plaintiffs Paul VanPortfliet, Mike Hickman, Allan Davisson, and Robert Hanson make nearly identical factual allegations.  At some point in the 1990s or 2000s, Earl Crouch met with each of them individually and encouraged them to open a business to operate as a broker for CDC.  *Id.* at 11, ¶ 44; 16, ¶ 65; 20, ¶ 89; 27, ¶ 129.  Mr. Crouch represented to each of them that the broker would own the business entity that he would create.  *Id.* at 11, ¶¶ 44-45; 16, ¶¶ 66-68; 20, ¶ 89; 27, ¶ 129.  Mr. Crouch also made representations about the manner in which profits would be split between CDC and the brokers, which he knew to be false.  *Id.* at 12, ¶ 46; 17, ¶ 69; 21, ¶ 90. Plaintiffs VanPortfliet, Hickman, Davisson, and Hanson all invested significant time and money into forming and operating their own businesses.  *Id.* at 12-13, ¶¶ 48-49; 17, ¶¶ 70-71; 21-22, ¶¶ 93, 97; 27, ¶ 130.  In 2007, CDC managers presented plaintiffs VanPortfliet, Hickman, Davisson, and Hanson with a contract they were required to sign that "made it clear" that CDC owned their respective businesses.  *Id.* at 15, ¶ 57; 19, ¶ 82; 24, ¶ 104; 27, ¶ 132.  Plaintiffs VanPortfliet and Hickman were terminated and

---

[1]The facts below are taken from the second amended complaint [Docket No. 10] and are presumed to be true for purposes of this motion.

[2]Earl Crouch passed away in 2012.  Docket No. 39 at 5 n.5.

resigned, respectively, in December of 2013. *Id.* at 15, ¶ 59; 19, ¶ 80.  Plaintiff

Davisson continues to operate his business for defendant CDC.  *Id.* at 23, ¶ 101.  It is

unclear from the second amended complaint whether plaintiff Hanson continues to be

employed by CDC.

     The other individual plaintiff, Michael Shauver, was hired in 2011 by defendant

Gail Crouch.  *Id.* at 24, ¶ 108.  Defendants Crouch and James Rausch told him that he

would be building his own business.  *Id.,* ¶¶ 109-10.  Plaintiff Shauver formed a

business to operate on behalf of CDC, which he continues to operate to this day.  *Id.* at

25, ¶¶ 113-14.  Plaintiff Shauver was not told that he could be fired at any time without

cause.  *Id.* at 24-25, ¶ 110.

     On April 10, 2014, plaintiffs filed suit in the Western District of Michigan,

Southern Division.  Docket No. 1-1.  That case was transferred to this district pursuant

to 28 U.S.C. § 1404(a) on March 16, 2016.[3]  Docket No. 1.  Plaintiffs' second amended

complaint presents five claims for relief arising out of the aforementioned facts.  Docket

No. 10.  First, plaintiffs VanPortfliet, Hickman, Davisson, Shauver, and Hanson claim

that defendant CDC violated the Fair Labor Standards Act ("FLSA") by paying them as

independent contractors, instead of employees.  *Id.* at 28-32, ¶¶ 134-150.  Second, all

plaintiffs claim that defendants committed fraud against them.  *Id.* at 32-37, ¶¶ 151-188.

Third, all plaintiffs claim that defendant CDC has been unjustly enriched.  *Id.* at 37-38,

¶¶ 189-199.  Fourth, all plaintiffs claim that defendants CDC, Crouch, Greg Jensen, and

---

[3]The defendants all argued that the Western District of Michigan did not have
personal jurisdiction over them.  Docket Nos. 1-88, 1-95.  The transferor judge opted
not to resolve this issue because she found that transfer was appropriate on grounds of
convenience.  Docket No. 1-106 at 4.

Ronald Goodrich committed civil conspiracy.  *Id.* at 38-40, ¶¶ 200-10.  Finally, plaintiffs VanPortfliet, Carpet Direct Trust, VP Property and Development, LLC, Allan Davisson, Goldstar Group, Inc., Davisson Enterprises, LLC, Michael Shauver, and Richard Shauver Company claim that defendants CDC, Crouch, and Jensen have violated Michigan's Franchise Investment Law, Mich. Comp. Laws § 445.1501 *et seq.*  *Id.* at 40-43, ¶¶ 211-27.

Defendants CDC, Crouch, Jensen, Rausch, and Charles Owens, Jr. (the "CDC defendants") have moved for judgment on the pleadings with respect to plaintiffs' first, second, third, and fourth claims for relief.  Docket No. 39.  Defendant Goodrich has moved for judgment on the pleadings with respect to plaintiffs' second and fourth claims for relief, the only two claims brought against him.  Docket No. 45.

## II.  STANDARD OF REVIEW

The Court reviews a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) much as it does a motion to dismiss pursuant to Rule 12(b)(6).  *See Adams v. Jones,* 577 F. App'x 778, 781-82 (10th Cir. 2014) (unpublished) ("We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion.") (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006)).  The Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id.* at 782.  To prevail, the moving party must show that "no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v.*

4

*Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

## III.  DISCUSSION

### A.  Fair Labor Standards Act (Count I)

Count I of the second amended complaint seeks damages for unpaid overtime under the Fair Labor Standards Act ("FLSA") against CDC.  Docket No. 10 at 28-32, ¶¶ 134-50.  Plaintiffs allege that CDC misclassified them as independent contractors when they were, in fact, employees.  *Id.* at 28, ¶ 134.  CDC argues that this claim is barred by the statute of limitations.  Docket No. 39 at 2.

A claim under the FLSA for overtime compensation is "forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years."  29 U.S.C. § 255(a).  A violation of the FLSA is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  This lawsuit was filed on April 10, 2014.  Docket No. 1-1.

The CDC defendants argue that a two-year statute of limitations applies in this case because plaintiff makes only conclusory allegations regarding willful misclassification.  Docket No. 39 at 3 n.2.  Plaintiffs allege that defendants classified them as independent contractors as part of "a deliberate scheme to avoid paying employees hourly wages" and to shift the "bulk of company expenses onto these employees."  Docket No. 10 at 31, ¶ 141.  In addition, plaintiffs enumerate eighteen

5

factors suggesting that they were and are employees, not independent contractors. *Id.* at 28-30, ¶ 134.  Plaintiff's factual allegations, taken as true, make it plausible that the CDC defendants showed reckless disregard for the proper classification of plaintiffs under the FLSA.  Accordingly, at this stage, plaintiffs have alleged sufficient evidence to consider potential violations of the FLSA going back to April 10, 2011.

The CDC defendants argue that plaintiffs' claim is time-barred because "[t]he FLSA violation Plaintiffs allege was a single act – the misclassification allegedly reflected in the independent contractor agreements."  Docket No. 39 at 3-4.  To support this claim, the CDC defendants rely almost exclusively on *Alldread v. City of Grenada*, 988 F.2d 1425 (5th Cir. 1993).  Docket No. 39 at 4-5.  The Court in *Alldread* considered FLSA regulations whereby a public employer could exclude payments for firefighters' sleep time "only if there [was] an expressed or implied agreement between the employer and the employees."  *Alldread,* 988 F.2d at 1428.  The city obtained "FLSA Agreements" from the firefighters by which they agreed that sleep time would be deducted from their hours.  *Id.* at 1429.  More than three years after signing the agreements, the plaintiffs sued under the FLSA and argued that the city coerced them into signing the waivers and that, as a result, the waivers were void.  *Id.* at 1430.  The court held that the statute of limitations had run because the plaintiffs alleged only a single violation of the FLSA – the procurement of the waivers – which had occurred more than three years prior to the suit being filed.  *Id.* at 1431; *see also Anderson v. City of Bristol,* 6 F.3d 1168, 1176 (6th Cir. 1993) (holding that plaintiff firefighters' overtime claims were barred by the statute of limitations because wages had been

reduced five years prior and each subsequent issued paycheck did include proper overtime pay). Similarly, in *Knight v. Columbus, Ga.*, 19 F.3d 579 (11th Cir. 1994), the Eleventh Circuit noted that, if an employer's classification decision is irrelevant to a plaintiff's right to recover for unpaid wages, the statute of limitations runs from each paycheck. *Id.* at 582. In *Knight*, the city classified certain police officers as exempt executive or administrative employees. *Id.* at 581. The city argued that the officers' claims were barred by the statute of limitations because its classification system was adopted more than three years before the filing of the suit. *Id.* The Eleventh Circuit rejected the city's argument, stating that the city's policy was irrelevant to the question of how to appropriately classify the plaintiffs' employment status and, therefore, the statute of limitations ran from each paycheck. *Id.* at 582.

Unlike *Alldread*, and similar to the facts in *Knight,* the contracts signed by plaintiffs in 2007 do not provide either the basis for, or a defense against, plaintiffs' FLSA claim. *See Phillips v. Carpet Direct Corp.*, No. 16-cv-02438-MEH, 2017 WL 121630, at *7 (D. Colo. Jan. 10, 2017) (applying *Knight*, *Anderson*, and *Alldread* to support a finding that the statute of limitations for CDC's alleged FLSA violations runs from each paycheck). In determining whether an individual is an independent contractor or an employee for FLSA purposes, the "inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (quoting *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994)). In *Baker*, the Tenth Circuit considered and rejected an employer's

characterization of rig welders as independent contractors despite the fact that each welder signed a document entitled "Agreement With Independent Contractor." *Baker*, 137 F.3d at 1439. The CDC defendants are therefore incorrect when they argue that the contracts signed by plaintiffs in 2007 "limit [their] rights to certain compensation under the FLSA." Docket No. 44 at 2. The 2007 contracts are irrelevant to whether plaintiffs were, in fact, independent contractors for purposes of plaintiffs' FLSA claim.

Accordingly, plaintiffs may proceed on their claims under the FLSA and recover based on deficient paychecks issued on or after April 10, 2012. If plaintiffs successfully demonstrate that defendants' conduct was willful, they can recover based on deficient paychecks issued on or after April 10, 2011.

## B.  Choice of Law

Before turning to the tort claims alleged by plaintiffs, the Court considers the applicable law. Generally, a federal trial court exercising supplemental jurisdiction over state law claims applies the forum state's choice of law. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)). However, because this case was transferred from another forum under 28 U.S.C. § 1404(a), the Court "must follow the choice of law rules of the transferor court." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964)).[4]

---

[4]Where a case is transferred under § 1404(a) and the transfer cures a jurisdictional defect, the Court must ordinarily consider whether the transferor court in fact had personal jurisdiction over the relevant party. *Trierweiler*, 90 F.3d at 1532 ("We find that this rule sensibly discourages forum-shopping; it prevents a party from filing in

Michigan courts apply Michigan law unless a "rational reason" to do otherwise exists. *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997) (citation omitted).  To determine if there is a rational reason to apply another state's law, Michigan courts apply a two-part test: first, the court "must determine if any foreign state has an interest in having its law applied.  If no state has such an interest, the presumption that Michigan law will apply cannot be overcome.  If a foreign state does have an interest in having its law applied, [the court] must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.*

Colorado has an interest in its law being applied in this case.  In determining that this case should be transferred to Colorado, the court in the Western District of Michigan aptly noted that:

> This case is centered on conduct and activities initiated in Colorado, where Carpet Direct operates. Defendant Carpet Direct is a Colorado corporation with its principal place of business in Colorado.  As the CDC Defendants point out, Plaintiffs' claims and allegations arise from the parties' business relationship, specifically claims about Carpet Direct's business model and the 2007 Agreements signed by Plaintiffs in Colorado, which they claim fundamentally altered their relationship with Carpet Direct.  Plaintiffs all traveled to Colorado to sign Agreements, which designate Colorado law as the law governing the Agreements and also establish Colorado as the forum for disputes.  Three of the five individual Defendants are residents of Colorado.  The various Defendants' conduct and activities in Michigan, if any, appear to be minimal. Moreover, two of the five individual Plaintiffs are residents of Colorado, and it does not appear that the Colorado Plaintiffs or their claims have any

---

a district that lacks jurisdiction to hear his or her case in order to receive the benefit of that forum's law.").  The defendants in this case moved to dismiss the suit for lack of personal jurisdiction, Docket Nos. 1-88, 1-95, but the questions of personal jurisdiction were not resolved before transfer.  Docket Nos. 1, 1-106 at 4.  Because the Court finds that the transferor court would apply Colorado law, the Court does not consider whether the transfer of this case cured any jurisdictional defects.

connection with Michigan.  The sole federal claim, the FLSA claim, is
alleged against the Colorado corporate Defendant Carpet Direct only.

Docket No. 1-106 at 8-9.  While the residency of the parties, standing alone, does not

warrant application of a particular state's laws, *Sutherland, Ltd.*, 562 N.W.2d at 472, in

this case virtually all of the conduct between the parties occurred in Colorado.

Colorado has an interest in applying its law to the conduct of businesses operated in

Colorado, contracts signed in Colorado, and alleged misrepresentations made in

Colorado.

The next question is whether Michigan's interests mandate application of

Michigan law despite Colorado's interest.  While Michigan has an interest in applying its

own law to protect its citizens from tortious conduct, *see, e.g., Irwin Seating Co. v. Int'l

Bus. Machines Corp*., 2005 WL 1475390, at *6 (W.D. Mich. June 22, 2005) (listing

cases), there is no allegation here that Mr. Crouch's misrepresentations occurred in

Michigan and the 2007 contracts, which purportedly changed the relationship between

the parties, were signed in Colorado.  *See* Docket No. 10 at 11, ¶ 44 ("Plaintiff

VanPortfliet met with Earl Crouch in Colorado Springs where Crouch convinced

VanPortfliet to open a business in Grand Rapids, Michigan.").  Accordingly, the Court

finds that Michigan's interests in the matter at hand do not mandate application of

Michigan law.  Because the transferor court would have applied Colorado law, this

Court will apply Colorado law.

Accordingly, the Court will apply Colorado law in analyzing plaintiffs' tort claims.

## C.  Fraud (Count II)

### 1. Statute of Limitations

Under Colorado law, there is a three-year statute of limitations for fraud claims. Colo. Rev. Stat. § 13-80-101(1)(c).  "[T]he three-year statute of limitations [for fraud claims] begins to run when the defrauded person has knowledge of facts which in the exercise of proper prudence and diligence would enable him to discover the fraud perpetrated against him." *Hansen v. Lederman*, 759 P.2d 810, 812 (Colo. App. 1988) (citing *Greco v. Pullara*, 444 P.2d 383, 384 (Colo. 1968); Colo. Rev. Stat. § 13-80-108(3)).

According to the second amended complaint, plaintiffs Hickman, Hanson, Davisson, and VanPortfliet learned in 2007 that "CDC owned [their] business" and "[i]t was at that time that Plaintiff[s] became aware that [they] had never owned [their] own business as represented by Crouch and CDC."  Docket No. 10 at 33-36, ¶¶ 157-58, 166, 174, 182.  Accordingly, plaintiffs discovered the fraud perpetrated against them as of 2007, which gave them until 2010 to bring their claims.[5]  Plaintiffs did not file this suit until April 10, 2014.  Docket No. 1-1.

Plaintiffs argue that "the facts pled could allow a reasonable jury to determine that the Plaintiffs discovered the claims of fraud, or the extent of these claims, as late as 2013."  Docket No. 43 at 11.  In support of this claim, plaintiffs point to the fact that plaintiff Hickman "asked about his retaining his business that he had purchased" in December 2013.  Docket No. 10 at 20, ¶ 83.  This argument fails.  Plaintiffs allege that

---

[5]Plaintiff Shauver executed a nearly identical agreement on August 8, 2011. Docket No. 39-5 at 7.  Accordingly, under the three-year statute of limitations, his claim was timely.  *See* Docket No. 1-1 (Complaint filed on April 10, 2014).

the 2007 agreements "made it clear" that they did not own their respective businesses. *Id.* at 15, ¶ 57; 19, ¶ 82; 24, ¶ 104; 27, ¶ 132.  A claim for fraud does not accrue when a plaintiff has actual knowledge of fraud, but rather when he knows enough to exercise due diligence and discover the fraud.  *Hansen*, 759 P.2d at 812.  The fact that plaintiffs continued to ask questions as late as 2013 does not extend the statute of limitations.

The Court finds that plaintiffs Hickman, Hanson, Davisson, and VanPortfliet's claims for fraud against all defendants are barred by the statute of limitations.

### 2. *Ratification*

As to plaintiff Shauver, the CDC defendants argue that he was aware of the purported fraud on August 8, 2011, when he executed his independent contractor agreement.[6]  Docket No. 39 at 7; *see also* Docket No. 39-5 at 7.  Under Colorado law,

> [i]f one elects to affirm the agreement, after full knowledge of the truth respecting the false and fraudulent representations, and thereafter continues to carry it out and receive its benefits, he may not thereafter maintain an action in damages for deceit, because this would constitute ratification of the agreement and a condonation of the fraud; otherwise one might, with knowledge of fraud, speculate upon the advantages or disadvantages of an agreement, receive its benefits, and thereafter repudiate all its obligations.

*Tisdel v. Central Sav. Bank & Trust Co.*, 6 P.2d 912, 918 (Colo. 1931).  In order to sustain the defense of ratification, it must be clear that "the defrauded party, with full

---

[6]"In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint."  *Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir. 2002).  However the Court is free to consider documents referred to in the complaint "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.*  Defendants have attached the independent contractor agreements signed by plaintiffs.  *See* Docket Nos. 39-1, 39-2, 39-3, 39-4, 39-5.  The contracts signed by plaintiffs are integral to the complaint and plaintiffs do not dispute their authenticity.

knowledge of the truth respecting the false representations, elected to continue to carry out the agreement." *Holland Furnace Co. v. Robson*, 402 P.2d 628, 630-31 (Colo. 1965) (citing *Bankers Trust Co. v. International Trust Co.*, 113 P.2d 656 (Colo. 1941)); *see also Kammerer v. Enesco Corp.,* No. 99-cv-2127-JLK, 2005 WL 3088584, at *3 (D. Colo. Nov. 17, 2005) (citing *Holland* to support a finding of ratification of fraud).

According to the second amended complaint, plaintiff Shauver was hired by CDC in 2011.  Docket No. 10 at 24, ¶ 108.  When he was hired, CDC led him to believe he was in business for himself.  *Id.* at 25, ¶¶ 115-16.  He signed his contract with CDC on August 8, 2011.  Docket No. 39-5 at 7.  That contract described "Rights Upon Termination."  Docket No. 39-5 at 3-4.  The contract between plaintiff Shauver and CDC made their relationship clear.[7]  Moreover, unlike the other individual plaintiffs, there is no allegation that plaintiff Shauver was coerced into signing the contract by virtue of already having invested capital in the business.  Plaintiff Shauver continues running his business for defendant CDC.  Docket No. 10 at 25, ¶ 114.  Having accepted the benefits of that contract for at least five years, plaintiff Shauver has ratified that agreement despite any purported fraud in the inducement.

---

[7]The second amended complaint states that, "[i]n February 2002, Defendant James Rausch as regional Director for Defendant CDC made a representation that plaintiff Shauver had complete control and ownership of his business."  Docket No. 10 at 26, ¶ 124.  Because plaintiff Shauver was hired in 2011, *id.* at 24, ¶ 108, the date appears to be a typographical error – the alleged misrepresentation probably occurred in 2012.  While, under Colorado law, a subsequent oral agreement can modify a written contract, *see DeFranco v. Storage Tech. Corp.*, 622 F.3d 1296, 1304 n.4 (10th Cir. 2010) (citing *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1193 (Colo. 2001)), plaintiffs do not allege that the underlying contract was modified as a result of Rausch's statements.  *See* Docket No. 43 at 11.

Plaintiffs argue that plaintiff Shauver did not ratify the agreement because there is a factual question as to "whether, and to what extent, the Plaintiffs may have been fully aware of the fraud." Docket No. 43 at 11. In support, they cite a Michigan case which provides that, if defendants prevent a plaintiff from objecting to a fraudulently created agreement, there is no ratification. *First of Michigan Corp. v. Mansour*, 2002 WL 1011771, at *4 (Mich. Ct. App. May 17, 2002). There is no allegation that the defendants prevented plaintiff Shauver from meaningfully objecting to the terms of the independent contractor agreement.

Accordingly, plaintiff Shauver's claim for fraud against all defendants will be dismissed.

### D.  Unjust Enrichment (Count III)

Plaintiffs' third claim for relief alleges that defendant CDC was unjustly enriched. Docket No. 10 at 37-38, ¶¶ 189-199. In order to state a claim for unjust enrichment plaintiffs must show "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). The CDC defendants argue that plaintiffs' claims for unjust enrichment are barred by the statute of limitations, precluded by the existence of a contract, and fail to allege the elements for recovery under a theory of unjust enrichment. Docket No. 39 at 10-12.

#### 1.  Statute of Limitations

"[B]ecause unjust enrichment is a form of relief in quasi-contract or contract implied in law, the time within which to assert such a claim ordinarily is assessed under

the three-year statute of limitations for contract actions."[8]  *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) (citing *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000)).  "A cause of action accrues on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  *Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 158 (Colo. App. 1995) (citing Colo. Rev. Stat. § 13-80-108(1)).

Plaintiffs' unjust enrichment claims are based on plaintiffs' belief "that they were owners of their own individual business and, therefore, their investment of capital into the businesses benefited their owner's equity in the businesses that they had started."  Docket No. 10 at 37, ¶ 190.  As discussed above, plaintiffs Hickman, Hanson, Davisson, and VanPortfliet have known since 2007 that they were not the owners of their individual businesses.  *Id.* at 15, ¶ 57; 19, ¶ 82; 24, ¶ 104; 27, ¶ 132.

Plaintiffs argue that the unjust enrichment injury in this case "is still happening" because plaintiffs continue "working for Carpet Direct providing them economic benefit based on the inaccurate statements that were made to them."  Docket No. 43 at 13. Plaintiffs do not cite any authority for extending the statute of limitations on an unjust enrichment claim because defendants continue to retain the benefit of their wrongdoing.

---

[8]As unjust enrichment claims are equitable, they are "technically subject to an equitable laches rather than a legal statute of limitations analysis."  *Interbank Investments, L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229-30 (Colo. App. 2000).  However, in the absence of extraordinary circumstances, the court will apply the statute of limitations relating to "actions at law of like character."  *Id.* (quoting *Brooks v. Bank of Boulder*, 911 F. Supp. 470, 477 (D. Colo. 1996)).  Plaintiffs have not alleged any extraordinary circumstances; therefore, the Court applies the statute of limitations for a contract claim.

A cause of action generally accrues "when a suit may be maintained thereon." *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 58 (Colo. App. 2011) (quoting *Jones v. Cox*, 828 P.2d 218, 224 (Colo. 1992)). On a quasi-contract claim, such as unjust enrichment, "[t]he statute of limitations [] begins to run . . . when a plaintiff has conferred a benefit upon the defendant and the retention of the benefit becomes unjust." *Id.* at 58-59 (citation omitted). Plaintiffs knew in 2007, when they signed the independent contractor agreements, that they did not own their companies and that, as a result, their capital investments were conferring a benefit on defendants.

Accordingly, the Court finds that plaintiffs Hickman, Hanson, Davisson, and VanPortfliet's claims for unjust enrichment accrued in 2007 and are barred by the three-year statute of limitations. This claim will be dismissed as to those plaintiffs.

### 2. Existence of a Contract

Defendants argue that plaintiff Shauver's unjust enrichment claim is barred because an express contract governs the relationship between the parties. Docket No. 39 at 10-11. A party cannot recover on a theory of quasi-contract, such as unjust enrichment, when an express contract covers the same subject matter. *Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). However, a party may recover on quasi-contract "when the party will have no right under an enforceable contract." *Id.* (citations omitted).

The validity of the contract signed by plaintiff Shauver in 2011 is in doubt in light of his FLSA claim. *See Phillips*, 2017 WL 121630, at *10 (finding that dismissal of plaintiff's unjust enrichment claim against CDC is improper because, if the plaintiff "is found to be an employee of CDC under the FLSA, rather than an independent

16

contractor, the enforceability of the agreements may be in question"). While plaintiff
Shauver cannot recover on a theory of unjust enrichment if his contract is valid, this
issue cannot be determined until the validity of his independent contractor agreement is
resolved.

### 3.  Failure to State a Claim

Briefly, the CDC defendants argue that plaintiffs have failed to state a claim
against the individual defendants. Docket No. 39 at 11. However, the second
amended complaint states that plaintiffs' claim for unjust enrichment is brought by all
plaintiffs "as to Defendant CD[C]." Docket No. 10 at 37. Accordingly, defendants'
request to dismiss this claim as to the individual defendants is moot.

In a footnote, the CDC defendants state that the corporate plaintiffs should be
dismissed as well. Docket No. 39 at 12 n.8. Plaintiffs state that the defendants
"received unjust enrichment from the Plaintiff corporations" and therefore "they are
proper plaintiffs to the unjust enrichment claim." Docket No. 43 at 13. While plaintiffs
may be correct, dismissal of this claim as to the corporate plaintiffs, except for the
Richard Shauver Company, LLC, is justified in light of the statute of limitations having
run against the individual defendants who operate those entities. *See* Docket No. 10 at
4-6, ¶¶ 10-25 (describing the corporate plaintiffs).

### E.  Conspiracy (Count IV)

Although plaintiffs' second amended complaint refers to conspiracy to violate the
FLSA and conspiracy to commit fraud, plaintiffs have stipulated to the dismissal of that
portion of the claim alleging conspiracy to violate the FLSA. Docket No. 43 at 15. The
defendants move to dismiss plaintiffs' conspiracy to commit fraud claim as barred by

the statute of limitations and insufficient in light of the intracorporate conspiracy doctrine.[9]  Docket No. 39 at 13-15; Docket No. 45 at 12, 14.

### 1. Statute of Limitations

"[T]he elements [of] a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action." *Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011) (quotation omitted).  As a result, "[c]ivil conspiracy claims . . . share a statute of limitations with the underlying tort," and their "accrual dates are linked to the accrual date[s] of the underlying tort[s]." *Id.*  The underlying tort in this instance is fraud, which, as discussed above has a three-year statute of limitations. The Court has already found that plaintiffs Hickman, Hanson, Davisson, and VanPortfliet's claims for fraud against all defendants accrued in 2007 and are accordingly barred by the statute of limitations.  The same accrual date applies to the conspiracy claim and plaintiffs' claims for conspiracy are similarly time-barred.

### 2. Ratification

"If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989).  While the parties do not discuss it, the ratification of fraudulent statements would bar any claim for conspiracy to commit fraud. As the Court discussed above, plaintiff Shauver has ratified any alleged fraud

---

[9]As discussed below, because the Court determines that plaintiff Shauver has ratified the agreement between the parties, the Court finds dismissal appropriate without consideration of the intracorporate conspiracy doctrine.

perpetrated by defendants and his corresponding conspiracy claim will be dismissed.

### F.  Defendant Goodrich's Motion for Judgment on the Pleadings

Defendant Goodrich has filed his own motion for judgment on the pleadings. Docket No. 45.  Plaintiffs bring two claims for relief as to defendant Goodrich: fraud and civil conspiracy.  Docket No. 10 at 32-37, ¶¶ 151-188; 38-40, ¶¶ 200-10.  Defendant Goodrich adopted and incorporated the CDC defendants' arguments that plaintiffs Hickman, Hanson, Davisson, and VanPortfliet's fraud and conspiracy claims are barred by the statute of frauds.  Docket No. 45 at 12-13.  For the reasons discussed above, plaintiffs Hickman, Hanson, Davisson, and VanPortfliet's claims for fraud and conspiracy against defendant Goodrich will be dismissed because they are barred by the statute of limitations.

Similarly, defendant Goodrich adopted and incorporated the CDC defendants' argument that plaintiffs had ratified the purportedly fraudulent agreements. *Id.* at 14. For the reasons discussed above, plaintiff Shauver's claims for fraud and conspiracy against defendant Goodrich will be dismissed.

## IV.  CONCLUSION

In accordance with the foregoing, it is

**ORDERED** that the CDC Defendants' Motion for Judgment on the Pleadings [Docket No. 39] is granted in part and denied in part and Defendant Ronald L. Goodrich, C.P.A.'s Motion for Judgment on the Pleadings [Docket No. 45] is granted.  It is further

**ORDERED** that Counts II and IV of plaintiffs' second amended complaint [Docket No. 10] are dismissed with prejudice as to all defendants.  It is further

**ORDERED** that the claims of plaintiffs Paul Vanportfliet; Carpet Direct Trust; VP Property & Development, LLC; Mike Hickman; Hickman Corporation; Allan Davisson; Goldstar Group, Inc.; Davisson Enterprises, LLC; Robert Hanson; and Walking R Enterprises are dismissed with prejudice as to Count III of plaintiffs' second amended complaint.  It is further

**ORDERED** that defendants Ronald L. Goodrich, James Rausch, and Charles Owens Jr. are dismissed from this lawsuit.


DATED March 15, 2017.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge